## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALINA MARIE GOMEZ,**

    **Plaintiff,**

**v.**                 **CASE NO:**

**CENTENE CORPORATION and**

**CENTENE MANAGEMENT COMPANY LLC**

    **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ALINA MARIE GOMEZ, (hereinafter "Ms. Gomez" or "Plaintiff"), a Florida resident, by and through the undersigned counsel, hereby sues Defendants, CENTENE CORPORATION and CENTENE MANAGEMENT COMPANY LLC (hereinafter "Defendants," "Centene," or "Company") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendants, her former employer, seeking to recover damages for unlawful discrimination and retaliation based on her disability, age, and national origin in violation of the Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as

amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendants of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA").

2.      As further set forth below, Plaintiff alleges that Defendants unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her disability, age, and national origin, and retaliated against her in violation of her rights under the FCRA. Plaintiff further alleges that Defendants unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FMLA. Additionally, Plaintiff alleges that Defendants violated the FLSA by misclassifying her as an exempt employee and failing to pay overtime compensation.

3.      As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, loss of future pay increases, and unpaid overtime compensation. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.    The Plaintiff is ALINA MARIE GOMEZ, a 52-year-old Cuban-American female who suffers from osteogenesis imperfecta, a genetic disorder causing bones to break easily, resulting in over 60 fractures throughout her lifetime and chronic pain requiring ongoing medical treatment. Ms. Gomez resides in Hillsborough County, Florida.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on her disability, age, and national origin under the FCRA and the FMLA.

10.    During the period from June 27, 2022, until October 16, 2025, Defendants employed Plaintiff as an RN Case Manager/Care Manager RN.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the FCRA, the FMLA, and the FLSA.

13.    The Defendants are CENTENE CORPORATION and CENTENE MANAGEMENT COMPANY LLC, which also operates as Sunshine Health, with their corporate headquarters located at 7700 Forsyth Blvd., St. Louis,

MO 63105, and local operations at 8725 Henderson Rd, Tampa, FL 33634.

14.    At all times material herein, Defendants regularly conducted, and continue to conduct, business throughout Hillsborough County, Florida, and employed Plaintiff to work remotely to their Tampa, Florida office.

15.    At all times material herein, Defendants met, and continue to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the FCRA, the FMLA, and the FLSA, employing 501 or more employees.

16.    Accordingly, Defendants are liable under the FCRA, the FMLA, and the FLSA for the unlawful discrimination, retaliation, interference, and wage and hour violations to which they subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On June 5, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability

discrimination, sex discrimination, and retaliation.

19.    On June 13, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2025-01958) against Defendant.

20.    On September 12, 2025, the Florida Commission on Human Relations (FCHR) issued a Notice of State Rights stating, "Since the EEOC's notice was issued more than 180 days after the complaint was initially filed with the EEOC, the complainant may bring a civil action against the person named in the complaint in any court of competent jurisdiction WITHIN ONE YEAR of the issue date of this notice pursuant to Sections 760.11(4) and (8), Florida Statutes."

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    On June 27, 2022, Defendants hired Plaintiff as an RN Case Manager/Care Manager RN at a salary of $42 per hour. Plaintiff worked remotely to Defendants' Tampa, Florida office and was classified as an exempt employee.

23.    Plaintiff suffers from osteogenesis imperfecta, a genetic disorder

that causes bones to break easily. As a result of this condition, Plaintiff has sustained over 60 fractures throughout her lifetime, including fractures to her spine, ribs, fingers, toes, hands, ankles, tibia, and fibula. These injuries have resulted in chronic pain requiring ongoing medical treatment.

24.    In November 2021, prior to her employment with Defendants, Plaintiff sustained a severe pilon fracture that prevented her from working for almost a year. This injury, combined with her osteogenesis imperfecta, causes significant functional limitations including the inability to type, lift, or perform manual tasks, as confirmed by a Functional Capacity Evaluation.

25.    Plaintiff's medical conditions also include osteoarthritis and a TFCC tear in her left hand/thumb requiring multiple surgeries. She currently takes Gabapentin 100mg three times daily, Wellbutrin 25mg daily, and medical marijuana for chronic pain management. She wears braces for both ankles and a left immobilizer when pain flares.

26.    In December 2022, recognizing Plaintiff's disability and need for accommodations, Defendants provided Dragon speaking software as a permanent accommodation to help Plaintiff perform her job duties despite her inability to type effectively.

27.    However, in mid-2023, Defendants banned the use of templates

that were required for the Dragon software to function effectively, rendering Plaintiff's accommodation essentially useless and significantly impairing her ability to perform her job duties.

28.    In February 2024, due to her ongoing medical conditions requiring wrist surgery, Plaintiff requested FMLA leave from Defendants.

29.    From February 3, 2024, through November 11, 2024, Defendants approved Plaintiff for short-term disability, long-term disability, and ADA leave to address her medical conditions and undergo necessary treatment.

30.    On November 12, 2024, Plaintiff returned to work expecting that her Dragon speaking software accommodation would be available and functional. However, Defendants failed to provide this accommodation in a timely manner, forcing Plaintiff to attempt to perform her duties without the necessary assistive technology.

31.    Upon her return to work in November 2024, Plaintiff was subjected to intensified discriminatory treatment by her supervisor, Michelle Rose. This treatment included excessive micromanagement compared to younger, non-disabled employees, being required to use PTO for medical appointments despite her exempt status, and being subjected to restrictive lunch break policies not applied to her colleagues.

32.    Defendants also promised to provide Plaintiff with a proper desk chair accommodation but never provided it. Additionally, Plaintiff was expected to perform her duties for over 62 days without a proper desk, chair, ergonomic setup, or functional software while working from her disaster-stricken bedroom using only a single laptop screen.

33.    In February 2025, Michelle Rose issued a written reprimand to Plaintiff. Plaintiff refused to sign this reprimand and filed an internal complaint due to its retaliatory nature, as this was the first disciplinary action in her employment history with Defendants.

34.    Plaintiff requested lateral transfers to other positions but was denied, with Defendants citing a "probationary period" despite Plaintiff having worked for the company for years.

35.    On March 3, 2025, Plaintiff requested that an ADA accommodations partner discuss her mother's caregiver status and workplace limitations. This inquiry went completely unacknowledged by Defendants.

36.    On March 12, 2025, Plaintiff worked her last day before taking additional leave.

37.    On March 13, 2025, Plaintiff requested caregiver leave under the

FMLA to care for her mother. Defendants approved this caregiver leave through April 24, 2025, and Plaintiff was also approved for Caregiver Leave Benefits during this period.

38.    Despite approving Plaintiff's FMLA caregiver leave through April 24, 2025, and paying her 100% of her salary during this period, Defendants simultaneously claimed that Plaintiff was on "unauthorized leave" and subject to termination.

39.    From April 24, 2025, through June 30, 2025, Defendants approved Plaintiff for ADA leave accommodation, which was initiated by Dr. Alfred Hess, her orthopedic surgeon.

40.    Defendants subsequently approved extensions of Plaintiff's ADA accommodation leave from July 1, 2025, through July 14, 2025, and again from July 15, 2025, through October 15, 2025.

41.    On April 22, 2025, Plaintiff filed formal complaints with Defendants' corporate office regarding "medical grounds of workplace failures," detailing the various accommodations failures and discriminatory treatment she had experienced.

42.    On September 8, 2025, Plaintiff's medical documentation indicated the need to extend her leave from October 16, 2025, through

December 31, 2025.

43.    On September 10, 2025, Defendants notified Plaintiff that if she was unable to return to work by October 16, 2025, her employment would be administratively separated.

44.    On October 16, 2025, Plaintiff did not return to work and submitted an additional request for continuous leave based on her medical conditions.

45.    Despite Plaintiff's legitimate need for continued medical leave and her history of approved FMLA and ADA leave, Defendants incorrectly stated "FMLA: Not Eligible" and "Centene Medical Leave (CML): Not Eligible" in their termination documentation.

46.    On October 16, 2025, Defendants administratively separated Plaintiff from employment, claiming "undue hardship on business operations" and alleging that her "extended leave has significantly disrupted business operations, resulting in delays in outreach to Plan members that fall outside required timelines."

47.    At the time of her termination, Plaintiff commented: "I'd like to verify that I was intending on medical separation and want to make sure that was cleared for this termination. I don't find anything in the documents

I've received that note this as I was in good standing upon my leaving for medical leave please advise."

48.    Throughout her employment, Defendants misclassified Plaintiff as an exempt employee despite her performing non-exempt duties as an RN Care Manager. Defendants had previously lost a class action lawsuit for the same misclassification of RN Care Manager positions, and a DOL Opinion Letter from September 8, 2006, established that Case Managers do not qualify for the administrative exemption.

49.    As a result of this misclassification, Plaintiff regularly worked overtime hours for which she was not compensated, including approximately 12 hours of weekly overtime at her $42/hour rate, resulting in approximately $38,448 in unpaid overtime compensation over the past two years.

50.    Since her termination on October 16, 2025, Plaintiff has received no income from work, long-term disability, workers' compensation, or unemployment benefits, causing significant financial hardship during her ongoing medical treatment and recovery.

51.    Adding to Plaintiff's financial distress, she was a victim of multiple hurricanes (Debbie, Helene, and Milton) that destroyed her home

and belongings, and she was going through a recent divorce at the time of her termination.

52.    Plaintiff's national origin as a Cuban-American was known to Defendants throughout her employment. At age 52 during the relevant time period, Plaintiff was also a member of the protected class under the Age Discrimination in Employment Act.

53.    Defendants' treatment of Plaintiff was markedly different from that of younger, non-disabled employees. While Plaintiff was subjected to excessive micromanagement and restrictive policies, similarly situated employees who were younger and without disabilities were afforded greater flexibility and autonomy in their work arrangements.

54.    Despite Plaintiff's years of service and satisfactory performance, she was denied opportunities for lateral transfers and schedule flexibility that were previously granted and were available to other employees not in her protected classes.

55.    Throughout the relevant time period, Defendants demonstrated a pattern of interference with Plaintiff's FMLA rights by failing to provide proper accommodations upon her return from leave, subjecting her to retaliation for taking protected leave, and ultimately terminating her

employment while she was on or seeking additional FMLA-protected leave.

56.    Defendants' actions in banning the templates necessary for Plaintiff's Dragon software to function effectively constituted a failure to provide reasonable accommodations and interference with her ability to perform her job duties, particularly impacting her because of her disability.

57.    The timing of Defendants' increasingly harsh treatment of Plaintiff, beginning immediately after her return from FMLA leave in November 2024 and escalating through her termination in October 2025, demonstrates a clear pattern of retaliation for her exercise of FMLA rights.

58.    On May 29, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, Charge No. 511-2025-01958, alleging disability discrimination, age discrimination, national origin discrimination, retaliation, and FMLA interference.

59.    On June 13, 2025, Plaintiff received her Right to Sue Letter from the EEOC, with the EEOC determining that it would not proceed further with its investigation and making no determination on the merits of Plaintiff's claims.

60.    On June 5, 2025, Plaintiff also reported Defendants' FLSA violations to the Department of Labor's Wage and Hour Division regarding

her incorrect exempt classification and unpaid overtime compensation.

61.    On September 24, 2025, the DOL declined to take action on Plaintiff's FLSA complaint due to workload constraints but confirmed her private right to sue under the FLSA.

62.    On September 12, 2025, Plaintiff received a Florida Civil Rights Act Notice of State Rights with a one-year deadline for filing suit.

63.    At all times material herein, Plaintiff satisfied all administrative prerequisites for bringing claims under Title VII, the ADA, the ADEA, the FCRA, and the FMLA.

64.    Defendants' conduct described herein was intentional, willful, malicious, and taken with reckless disregard for Plaintiff's federally and state-protected rights.

65.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer significant damages including lost wages, lost benefits, emotional distress, mental anguish, and other compensatory damages.

## <u>COUNT I</u>
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### FMLA Interference

66.    Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.     At all times material hereto, Plaintiff was an "eligible employee," and Defendants were "employers," as those terms are defined by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611(2), (4).

68.     Plaintiff qualified for FMLA leave for her own serious health condition and for caregiver leave to care for her mother with a serious health condition.

69.     Plaintiff exercised her rights under the FMLA by taking protected medical leave from February 3, 2024, through November 11, 2024, and by taking approved caregiver leave from March 13, 2025, through April 24, 2025.

70.     Defendants knew Plaintiff was exercising rights under the FMLA and were aware of her entitlement to protected leave.

71.     The FMLA prohibits employers from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1).

72.     Defendants interfered with Plaintiff's FMLA rights, including but not limited to:

a.   Failing to timely restore her Dragon speaking software accommodation upon her return from FMLA leave in November 2024;

b.   Requiring her to work without proper accommodations for more than 62 days;

c.   Inaccurately stating "FMLA: Not Eligible" in termination documents despite her prior approved FMLA leave;

d.   Claiming Plaintiff was on "unauthorized leave" while she was on approved FMLA caregiver leave; and

e.   Terminating her employment while she was seeking additional FMLA-protected medical leave.

73.   Defendants' actions interfered with, restrained, and denied Plaintiff's ability to exercise her rights under the FMLA.

74.   Defendants' violations of the FMLA were willful.

75.   As a direct and proximate result of Defendants' unlawful interference, Plaintiff suffered damages including lost wages, lost benefits, and other monetary losses.

76.   Plaintiff is entitled to appropriate equitable relief, including reinstatement or front pay, as well as compensatory, liquidated, and other

damages authorized by 29 U.S.C. § 2617.

**WHEREFORE**, Plaintiff demands judgment against Defendants and requests that this Court award the following relief:

a.    Compensatory damages for lost wages, benefits, and other monetary losses;

b.    Reinstatement to her former position or front pay in lieu thereof;

c.    Liquidated damages;

d.    Pre- and post-judgment interest;

e.    Reasonable attorney's fees, reasonable expert witness fees, and other costs of the action pursuant to 29 U.S.C. § 2617(a)(3);

f.    Such other relief as this Court deems just and proper.

<u>**COUNT II**</u>
**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**
**FMLA Retaliation**

77.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

78.    The FMLA prohibits employers from discharging or otherwise discriminating against an employee for exercising rights under the Act. 29 U.S.C. § 2615(a)(2).

79. As alleged herein, Plaintiff engaged in statutorily protected activity by requesting and taking FMLA leave for her serious health conditions and for caregiving responsibilities for her mother.

80. Defendants knew of Plaintiff's protected activity.

81. Defendants retaliated against Plaintiff for exercising her FMLA rights, including but not limited to:

 a. Subjecting her to excessive micromanagement upon her return from FMLA leave in November 2024;

 b. Requiring her to use PTO for medical appointments despite her exempt status;

 c. Issuing a retaliatory written reprimand in February 2025;

 d. Denying her lateral transfer requests;

 e. Failing to acknowledge or address her accommodation requests; and

 f. Terminating her employment on October 16, 2025.

82. The timing and escalation of adverse actions, beginning immediately after Plaintiff's return from FMLA leave and continuing through her termination, demonstrate a causal connection between her protected activity and Defendants' retaliatory conduct.

83.     Defendants' retaliatory actions were intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

84.     As a direct and proximate result of Defendants' retaliation, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

85.     Plaintiff is entitled to all legal and equitable relief available under the FMLA, including reinstatement, compensatory damages, liquidated damages, interest, attorneys' fees, and costs.

WHEREFORE, Plaintiff demands judgment against Defendants for:

a.      Compensatory damages for lost wages, benefits, and other economic losses;

b.      Reinstatement or front pay in lieu thereof;

c.      Liquidated damages;

d.      Pre- and post-judgment interest;

e.      Reasonable attorney's fees, expert witness fees, and costs pursuant to 29 U.S.C. § 2617(a)(3); and

f.      Such other relief as the Court deems just and proper.

<u>COUNT III</u>
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### Misclassification and Unpaid Overtime

86.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 75 of this Complaint as though fully set forth herein.

87.     At all times material herein, Defendants were and are "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), and Plaintiff was and is an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e).

88.     At all times material herein, Defendants were engaged in interstate commerce and/or in the production of goods for interstate commerce within the meaning of the FLSA.

89.     Throughout her employment, Defendants misclassified Plaintiff as an exempt employee despite her performing non-exempt duties as an RN Care Manager.

90.     Defendants had previously lost a class action lawsuit for the same misclassification of RN Care Manager positions, and a DOL Opinion Letter from September 8, 2006, established that Case Managers do not qualify for the administrative exemption under the FLSA.

91.     As a result of this misclassification, Plaintiff regularly worked

overtime hours for which she was not compensated, including approximately 12 hours of weekly overtime at her $42/hour rate.

92.    Defendants' failure to pay overtime compensation resulted in approximately $38,448 in unpaid overtime compensation over the past two years.

93.    Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a).

94.    As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff has suffered damages including unpaid overtime compensation and is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants and requests that this Court award the following relief:

a.    Unpaid overtime compensation in the amount of approximately $38,448;

b.    Liquidated damages pursuant to 29 U.S.C. § 216(b);

c.    Pre- and post-judgment interest;

d.    Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b);

e.    Such other relief as this Court deems just and proper.

## COUNT IV
## FCRA – DISABILITY DISCRIMINATION

95.     Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1–65 of this Complaint as though fully set forth herein.

96.     The Florida Civil Rights Act ("FCRA") prohibits employers from discriminating against an individual on the basis of disability with respect to compensation, terms, conditions, or privileges of employment. § 760.10(1)(a), Fla. Stat.

97.     At all relevant times, Plaintiff was a qualified individual with disabilities, including osteogenesis imperfecta, chronic pain conditions, osteoarthritis, mobility impairments, and related functional limitations requiring reasonable accommodations.

98.     Plaintiff was able to perform the essential functions of her position with reasonable accommodations, including the Dragon speaking software and ergonomic equipment promised by Defendants.

99.     Defendants were aware of Plaintiff's disabilities and her need for accommodations, as evidenced by her medical documentation, functional capacity evaluations, multiple leave requests, and direct communication with supervisors and HR.

100.   Defendants subjected Plaintiff to adverse employment actions because of her disabilities, including:

    a.    Failing to provide promised reasonable accommodations;

    b.    Eliminating templates necessary for the Dragon software to function;

    c.    Refusing to provide appropriate ergonomic equipment;

    d.    Forcing her to work for more than 62 days without proper tools;

    e.    Micromanaging her in ways not applied to non-disabled employees; and

    f.    Terminating her employment on October 16, 2025.

101.   Similarly situated employees without disabilities were not subjected to the same adverse treatment and were provided accommodations, flexibility, and autonomy that Plaintiff was denied.

102.   Defendants' actions constitute unlawful disability discrimination in violation of the FCRA.

103.   As a direct and proximate result, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other compensatory damages.

**WHEREFORE**, the Plaintiff, requests trial by jury of all issues so triable as of right, demands judgment against the Defendants and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant have violated the FCRA by discriminating against Plaintiff based on her disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's disability discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## FCRA – DISABILITY RETALIATION

104.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1–65 of this Complaint as though fully set forth herein.

105.    The FCRA makes it unlawful for an employer to retaliate against an employee for engaging in protected activity, including requesting accommodations or opposing practices made unlawful under the Act. § 760.10(7), Fla. Stat.

106.    Plaintiff engaged in protected activity by:

a.    Requesting disability accommodations;

b.    Requesting return-to-work assistance;

c.    Filing internal complaints regarding discrimination and accommodation failures on April 22, 2025;

d.    Submitting multiple ADA leave requests; and

e.    Opposing Defendants' discriminatory conduct.

107.  Defendants were aware of Plaintiff's protected activity.

108.  Following Plaintiff's protected activity, Defendants retaliated against her by:

a.    Increasing micromanagement;

b.    Requiring PTO use for medical appointments despite exempt status;

c.    Issuing a written reprimand in February 2025;

d.    Denying lateral transfers;

e.    Ignoring accommodation requests; and

f.    Terminating her employment on October 16, 2025.

109.  The temporal proximity between Plaintiff's protected activity and the adverse actions supports a causal connection.

110.   Defendants' conduct constitutes unlawful retaliation in violation of the FCRA.

111.   As a direct and proximate result, Plaintiff has suffered economic loss, emotional distress, and other compensatory damages.

WHEREFORE, the Plaintiff, requests trial by jury of all issues so triable as of right, demands judgment against the Defendants and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant have violated the FCRA by retaliating against Plaintiff based on her disability;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's retaliation, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.   Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by

Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.     Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VI
## FCRA – AGE DISCRIMINATION

112.  Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1–65 of this Complaint as though fully set forth herein.

113.   Plaintiff was 52 years old during the relevant time period and is a member of the protected class under the FCRA's age discrimination protections.

114.   The FCRA prohibits discrimination on the basis of age with respect to the terms, conditions, and privileges of employment. § 760.10, Fla. Stat.

115.   Plaintiff was qualified for her position and performed her job duties satisfactorily.

116.   Defendants treated younger, non-disabled employees more favorably than Plaintiff, including providing them with greater autonomy, flexibility, accommodations, and opportunities.

117.   Upon her return from leave, Plaintiff was subjected to excessive micromanagement, restrictive break policies, and harsher scrutiny that was not applied to younger employees.

118.   Defendants denied Plaintiff's requests for lateral transfers, which were granted to similarly situated younger employees.

119.   Plaintiff's termination occurred under circumstances supporting an inference of age discrimination, particularly given disparate treatment compared to younger colleagues.

120.   Defendants' actions constitute age discrimination in violation of the FCRA.

121.  As a direct and proximate result, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages.

**WHEREFORE**, the Plaintiff, requests trial by jury of all issues so triable as of right, demands judgment against the Defendants and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant have violated the FCRA by discriminating against Plaintiff based on her age;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's age discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by

Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VII
## FCRA – NATIONAL ORIGIN DISCRIMINATION

122.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1–65 of this Complaint as though fully set forth herein.

123.    Plaintiff is Cuban-American and is therefore a member of a protected class under the FCRA.

124. The FCRA prohibits employers from discriminating against an employee on the basis of national origin. § 760.10(1), Fla. Stat.

125. Defendants were aware of Plaintiff's Cuban national origin throughout her employment.

126. Plaintiff was qualified for her position and performed her duties satisfactorily.

127. Plaintiff was treated less favorably than non-Cuban and non-Hispanic coworkers, including receiving greater scrutiny, harsher attendance and break requirements, limited flexibility, and denial of transfers.

128. Defendants' actions culminated in Plaintiff's termination, which occurred under circumstances suggesting unlawful discriminatory animus.

129. Defendants' conduct constitutes national origin discrimination in violation of the FCRA.

130. As a direct and proximate result, Plaintiff has suffered lost income, emotional distress, and other compensatory damages.

**WHEREFORE**, the Plaintiff, requests trial by jury of all issues so triable as of right, demands judgment against the Defendants and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant have violated the FCRA by discriminating against Plaintiff based on her age;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's age discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the

        prevailing rate, as provided by law;

F.      Award Plaintiff her attorneys' fees, including litigation expenses,

        and the costs of this action; and

G.      Grant such other and further relief as this Court may deem

        equitable, just, and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 19th day of November 2025.

                                        */s/ Jason W. Imler, Esq*
                                        Jason W. Imler
                                        Florida Bar No. 1004422
                                        Alberto "Tito" Gonzalez
                                        Florida Bar No. 1037033
                                        **Imler Law**
                                        23110 State Road 54, Unit 407
                                        Lutz, Florida 33549
                                        (P): 813-553-7709
                                        Jason@ImlerLaw.com
                                        Tito@ImlerLaw.com
                                        Ashley@ImlerLaw.com
                                        Tiffany@ImlerLaw.com